J-A26044-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: T.M.L.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.L.M., NATURAL | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1022 WDA 2018 |

Appeal from the Order Dated September 5, 2017
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s):  2016-963 IVT

BEFORE:   BENDER, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    FILED NOVEMBER 14, 2018

S.L.M. (Mother) appeals from the order involuntarily terminating her parental rights to her minor son, T.M.L.M. (Child), born in June 2011, pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act.[1]  We affirm.

A prior panel of this Court recited the facts and procedural history of this case as follows:

> In late January 2014, Mother attempted suicide and was admitted to a psychiatric unit for three days.  Cambria County Children and Youth Service (CYS) became involved with Mother shortly thereafter, due to concerns about Mother's mental health, drug and alcohol abuse, lack of supervision of Child and his two siblings, and involvement in domestic violence.  The concerns prompted CYS to file a dependency petition, and on June 3, 2014, the

---

[1] The court terminated the rights of G.L.S. (Father) pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).  Father did not separately appeal and is not a party to the instant appeal.

juvenile court adjudicated Child dependent and transferred legal and physical custody to Child's maternal great-aunt under the supervision of CYS. Orphans' Court Order, 9/5/2017, at 1.

Throughout the almost three years Child was in kinship foster care, Mother's life resembled, in the words of the orphans' court, "a roller coaster ride." Id. at 3. The juvenile court in Child's dependency matter initially assessed Mother's compliance with her permanency plan goals as minimal to moderate, but from the December 2015 permanency review hearing onward, Mother was not compliant at all. Id. at 3–5. The juvenile court changed Child's permanency goal to adoption at the October 2016 permanency review hearing. Id. at 5.

Mother failed to complete successfully drug and alcohol treatment and mental health treatment. Id. at 4–5. She did not maintain stable housing. Id. Upon discharging Mother from family services, the family services provider assessed her prognosis as "poor," due to her continued denial of responsibility for the family dynamics and lack of cooperation with services. Id. at 5–6. The same service provider, on the other hand, described Child as "flourishing" within his kinship foster home. Id. at 6.

Mother had long gaps without contact with Child or CYS. Id. at 4–5. During one of those gaps, Mother was charged in connection with a large drug bust. Id. at 5. On April 18, 2017, Mother pled guilty to a variety of offenses involving the intent to deliver a controlled substance, conspiracy, and other related charges, and was sentenced to 36 months to 72 months of imprisonment at State Correctional Institute (SCI) Muncy. At the time of the termination hearings, Mother remained incarcerated. Id. at 6.

On October 25, 2016, CYS filed a petition seeking to terminate involuntarily Mother's parental rights. The orphans' court conducted hearings on the petition on January 24, 2017, May 5, 2017, and May 18, 2017. At the hearings, Suzann Lehmier, Esquire represented Child. On September 5, 2017, the orphans' court entered an order terminating Mother's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8) and 2511(b) of the Adoption Act.

In re Adoption of T.M.L.M., 184 A.3d 585, 587 (Pa. Super. 2018) (footnote

omitted).

Mother timely appealed the involuntary termination of her parental rights. On appeal, this Court determined that Child was deprived of his statutory right to counsel by a court-appointed attorney, as legal counsel had never attempted to ascertain his position directly and advocated solely for his best interests. T.M.L.M., 184 A.3d at 590-91. Accordingly, we remanded the case for the orphans' court to appoint separate counsel to represent Child's legal interests, and hold a new hearing if counsel required the opportunity to advocate on Child's behalf. Id. at 591.

On remand, the orphans' court appointed Richard Corcoran, Esquire, to represent Child's legal interests. Attorney Corcoran subsequently filed a report with the orphans' court detailing his thorough review of the record and his conversations with S.C., T.M.L.M.'s foster mother, and a forty-five minute conversation with T.M.L.M. in person. See Report of Attorney Appointed to Represent Legal Interests of T.M.L.M., 6/13/18, at 1-6. T.M.L.M. stated that he liked his current living arrangements, did not enjoy speaking on the phone with Mother, and did not want to visit with Mother as much as he wished to visit with grandparents. Id. T.M.L.M. did not want to live with his siblings. Id. T.M.L.M. wished for a "quick decision to get this over with." Id.

Attorney Corcoran averred that, based upon the record and the representations of T.M.L.M., which he found honest and credible, T.M.L.M.'s preference was for Mother's rights to be terminated and that T.M.L.M.'s best interests and legal preferences coincided. Id. Based upon the report, the

orphans' court declined to hold a new hearing and, on June 15, 2018, re-entered its previous order of September 5, 2017, terminating Mother's rights.

Mother timely appealed and filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2) and 1925(b).

On appeal, Mother presents the following question for our review:

> I. Whether the court either abused its discretion or committed an error of law when it granted the petition for involuntary termination of parental rights, thereby terminating the parental rights of [Mother] to T.M.L.M., a minor.[2]

Mother's Brief at 2 (unnecessary capitalization omitted).

We review cases involving the termination of parental rights according to the following:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously

_____

[2] The issue, as presented in Mother's brief, is identical in phrasing to Mother's Pa.R.A.P. 1925(b) statement. As identified, the issue is so vague as to risk waiver. See Krebs v. United Ref. Co. of Pennsylvania, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues). It is arguable that a claim of sufficiency of the evidence is readily apprehendible and therefore, not waived, pursuant to Commonwealth v. Laboy, 936 A.2d 1058, 1060 (Pa. 2007) (finding lack of waiver where the nature of a claim may be readily apprehended). Regardless of waiver, as we explain, infra, Mother's issues do not warrant relief.

emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

In re T.S.M., 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations omitted).

Here, the court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). Termination requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). To affirm, we need only agree with any one of the subsections of 2511(a), as well as subsection (b). See In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). Instantly, we focus our analysis on subsection (a)(2) and (b):

The relevant sections of 23 Pa.C.S.A. § 2511 provide:

> (a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for

- 5 -

his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." See In Interest of Lilley, 719 A.2d 327, 330 (Pa. Super. 1998). The grounds for termination are not limited to affirmative misconduct, but concern a parental incapacity that cannot be remedied. In re Z.P., 994 A.2d 1108, 1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. Id. A "parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." Id.

- 6 -

With regard to Section 2511(a)(2), Mother contends that there is insufficient evidence to show that the causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied. See Mother's Brief at 8. She contends that she took substantial actions to remedy her incapacity and abuse by taking classes in prison to learn how to be a better person and parent, and utilized all means available to continue contact with Child. Id. Accordingly, she argues that CYS did not prove by clear and convincing evidence that her parental rights could be terminated under Section 2511(a)(2).

It is true that while in the structured environment of incarceration, Mother showed some progress by completing educational programs. However, as noted above, a parent's "vow to cooperate" following a long period of uncooperativeness may be properly rejected as untimely or disingenuous. Z.P., 994 A.2d at 1117. Here, Child has been in placement since his third birthday, and he is currently seven years old. See N.T., 5/5/17, at 1-14. Mother was non-compliant and, indeed, missing, for large portions of Child's life, including December 2014 through February 2015, October 2015 through December 2015, and December 2015 through May 2016, at which time she was incarcerated. Id. at 16-17, 24-25. At the time of her discharge from drug and alcohol treatment, for example, Mother's prognosis was poor, and she had attended only half of the eighteen sessions. Id. at 47-51. On a family functionality test, her baseline functionality decreased while being provided services. Id. at 56-62. At that time, Mother was still denying

responsibility for the family dynamics, and was given a "bleak prognosis" by social workers based upon her lack of cooperation and focus. Id.

Upon review, we conclude that the trial court properly found by competent, clear, and convincing evidence that Mother's parental rights could be terminated pursuant to Section 2511(a)(2), based upon the finding that Mother evinced a continued incapacity – her drug use, disappearances, and lack of cooperation with treatment programs – which resulted in Child being without essential parental care, the cause of which "cannot or will not be remedied." See Lilley, 719 A.2d at 330; Z.P., 994 A.2d at 1117.

Next, we consider Child's needs and welfare pursuant to Subsection (b). See Z.P., 994 A.2d at 1121. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." Id. The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. Id. Ultimately, the concern is the needs and welfare of a child. Id.

We have explained:

> Before granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider

whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

Z.P., 994 A.2d at 1121 (quoting In re C.S., 761 A.2d 1197, 1202 (Pa. Super. 2000)). The trial court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. See In re N.A.M., 33 A.3d 95, 103 (Pa. Super. 2011). Additionally, this Court has held that a parent's love alone does not preclude termination. See In re L.M., 923 A.2d 505, 512 (Pa. Super. 2007).

Mother argues that termination does not serve Child's needs and welfare. See Mother's Brief at 12. She contends that she has a bond with Child and that no evidence was introduced to show that the bond was unhealthy, and that Child has not been harmed by his relationship with Mother. Id. She asserts that Child "stands to lose what is an extremely important bond to him." Id.

Hearing testimony indicates that Child loves Mother. See N.T., 5/5/17, at 23. However, the assertion that Child has suffered no harm through their relationship is not an accurate assessment of the evidence. Caseworkers testified that Child has been twice hospitalized and had an increase in poor behaviors after in person and phone contact with Mother. Id. at 20-21, 43-45. Further, Child indicated that he did not want to live with Mother, "did not really like" speaking on the phone with her, and wishes to stay in his current placement where S.C., Child's foster mother and his maternal great-aunt,

provides for his emotional and physical needs. See Report of Attorney at 1-6.

Thus, the record supports the finding that although Child had a bond with Mother, Child's need for stability and security is best served by termination. Clear and convincing evidence supported the trial court's termination of Mother's parental rights with respect to Section 2511(b), where adoption would best serve Child's needs and welfare. See Z.P., 994 A.2d at 1126-27.

For the above reasons, we affirm the order terminating Mother's parental rights.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2018